**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BADGER AUCTIONEERS, INC.,**

    **Plaintiff/Counter-Defendant,**

**v.**                                                                                              Case No:  6:16-cv-572-Orl-31TBS

**ZAID ALI and MY FRESH MARKET CORP.,**

    **Defendants/Counter-Plaintiffs.**

---

**MY FRESH MARKET CORP.,**

    **Third Party Plaintiff,**

**v.**

**THEODORE W. FLEISNER.,**

    **Third Party Defendant.**

---

## ORDER

This matter comes before the Court on the Motion to Dismiss Counts III and V of the Amended Complaint (Doc. 71) filed by the Defendants, Zaid Ali (henceforth, "Ali") and My Fresh Market Corp. ("My Fresh Market"), and the Motion to Dismiss (Doc. 85) filed by the Third Party Defendant, Theodore Fleisner ("Fleisner"), as well as the responses in opposition to those motions.

**I.     Background**

According to the allegations of the Amended Complaint (Doc. 66), which are accepted in pertinent part as true for purposes of resolving the Defendants' motion, the instant suit arose from

a March 2015 online auction of equipment from a closed Publix supermarket in Tampa. The Plaintiff, Badger Auctioneers, Inc. ("Badger"), conducted the auction.[1] Ali successfully bid on items totaling approximately $100,000; however, the credit card he tendered for payment was declined. (Doc. 66 at 5). The next day, when Ali showed up to remove the items, Badger was only able to charge $5,000 on the credit card. (Doc. 66 at 6). Ali sought to renegotiate, and several of the items he had successfully bid on were sold to other parties, leaving items totaling $56,995. (Doc. 66 at 6). In addition to the $5,000 paid by credit card, Ali gave Badger $21,000 in cash and a check for $30,995 drawn on a My Fresh Market account. (Doc. 66 at 6). After receiving the cash and the check, Badger allowed Ali to remove the equipment – although Badger states that Ali may have left some of that equipment at the site. (Doc. 66 at 6). Subsequently, the bank declined to honor the $30,995 My Fresh Market check, saying that a stop payment had been issued. (Doc. 66-5 at 1).

In the Amended Complaint, Badger asserts the following claims: breach of contract (Count I); conversion (Count II); a statutory claim pursuant to Fla. Stat. § 68.065 for the dishonored check (Count III); unjust enrichment (Count IV); and fraudulent inducement (Count V). The first four counts are asserted against both Defendants, while Count V is asserted only against Ali. By way of the instant motion, the Defendants seek dismissal of the claims asserted against Ali in Count III and Count V.

Not surprisingly, My Fresh Market presents a different version of the events surrounding the auction. As set forth in the Third Party Complaint – the factual allegations of which are accepted in pertinent part as true for purposes of resolving Fleisner's motion – My Fresh Market

---

[1] Fleisner, the Third Party Defendant, is Badger's CEO.

was the bidder, not Ali,[2] and it successfully bid on approximately $40,000 in equipment, not $100,000. (Doc. 76 at 3). When representatives of My Fresh Market arrived to pick up the equipment, Badger and its CEO, Fleisner, tried to force My Fresh Market into overpaying to have the items loaded onto trucks for shipping. (Doc. 76 at 5). My Fresh Market was ultimately prevented from picking up the compressors and evaporators it had won at auction – some of which Ali observed being sold to other auction participants – and was only allowed to pick up approximately $20,000 in other items. (Doc. 76 at 5). My Fresh Market asserts that Badger's "inability" to deliver the evaporators and compressors "led to the failure of My Fresh Market's business." (Doc. 76 at 5).

At some point after My Fresh Market realized the compressors and evaporators had been sold to a third party, the company alleges, Fleisner "stated he would deliver equivalent equipment to My Fresh Market Corp. within two or three days." (Doc. 76 at 6). No such equipment was delivered. (Doc. 76 at 6). Based on this statement, My Fresh Market asserts a fraud claim against Fleisner in the Third Party Complaint. (Doc. 76 at 6-7).

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.

---

[2] According to the Third Party Complaint, Ali was "an owner" of My Fresh Market. (Doc. 76 at 5).

*Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.    Analysis – Defendant's motion**

    **A.    Count III – Bad Check**

Florida Statute § 68.065(3)(a) provides in pertinent that,

> In any civil action brought for the purpose of collecting a payment instrument, the payment of which is refused by the drawee because

> of lack of funds, lack of credit, or lack of an account, or where the maker or drawer stops payment on the instrument with intent to defraud, and where the maker or drawer fails to pay the amount owing, in cash, to the payee within 30 days after a written demand therefor, as provided in subsection (4), the maker or drawer is liable to the payee, in addition to the amount owing upon such payment instrument, for damages of triple the amount so owing.

In Count III, Badger asserts a claim under Section 68.065(3)(a) against Ali and, in the alternative, My Fresh Market. (Doc. 66 at 8). Badger contends that, even though the check was drawn on a My Fresh Market account rather than Ali's personal account, Ali was still a "maker or drawer" of the check because he signed it and included his personal information, including his driver's license number, on the check. (Doc. 66 at 8). Badger also asserts, on information and belief, that Ali lacked the authority to sign the check because "the funds were for items Mr. Ali purchased at auction in his individual capacity." (Doc. 66 at 8).

Ali argues that the claim must be dismissed as to him because he was not a maker or drawer of the check. Ali is correct. Badger does not cite, and the Court has not uncovered, any statute or case law suggesting that adding a person's driver's license number to a corporate check makes that person personally liable on the instrument.

Badger's second assertion – that Ali was using a corporate check (and funds) for a personal purchase, and therefore he was a drawer of the check for purposes of Section 68.065(a) – runs afoul of Florida law governing signatures by representatives on negotiable instruments:

> If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check **if the signature is an authorized signature of the represented person**.

Fla. Stat. § 673.4021(3) (emphasis added). Badger contends that Ali's signature on the My Fresh Market Check was unauthorized because he was using corporate funds to buy equipment for himself. However, Florida's version of the Uniform Commercial Code defines "unauthorized

- 5 -

signature" as one made "without actual, implied, or apparent authority." Fla. Stat. § 671.201(44). Thus, the purpose for which the signature was made is not relevant. For purposes of determining whether a signature was "authorized," the issue is the relationship between the signer and the represented person. Badger has not alleged that Ali lacked the actual (or implied or apparent) authority to sign My Fresh Market checks, as required to hold him personally liable under Fla. Stat. § 673.4021(3). Accordingly, it has not alleged that Ali was a maker or drawer of the check at issue, as required to state a claim against him under Fla. Stat. § 68.065(3). Count III will be dismissed as to Ali.

### B. Count V – Fraud in the Inducement

In Count V, Badger alleges that by registering for the auction and providing a credit card, Ali falsely represented that he had sufficient funds to pay for the items for which he was the successful bidder. (Doc. 66 at 10). Instead, Badger contends, Ali intended to "buy out" the auction – meaning that he intended to "bid above [his] actual resources and then renegotiate the price of the property down after the auction." (Doc. 66 at 11). Badger contends that, due to this misrepresentation, it was fraudulently induced into entering into an auction contract with Ali. (Doc. 66 at 10-11).

Under Florida law, "fraud in the inducement" occurs when one party's ability to negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior. *Bradley Factor, Inc. v. United States*, 86 F.Supp.2d 1140, 1145 (M.D. Fla. 2000). The elements of a claim for fraud in the inducement in Florida are: (1) that the defendant misrepresented a material fact; (2) that the defendant knew or should have known that the statement was false; (3) that the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4) that the plaintiff was injured by acting

in justifiable reliance on the misrepresentation. *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1425 (S.D. Fla. 1996) (citing cases).

However, to be valid, a fraudulent inducement claim must be separate from any breach of contract claim. *Tiara Condominium Association, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring) (stating that limitation of economic loss rule to products liability cases did not affect common law principle requiring that tort claims be independent of any breach of contract claim). This tort is not independent of the breach. All Badger is claiming is that, at the time he entered the contract, Ali intended to breach it by not paying as much as he had bid. The harms of which Badger complains in Count V – loss of profits, loss of sales, and so on (Doc. 66 at 11) – arise from Ali's (alleged) failure to pay as much as he had bid. Misrepresentations relating to the breaching party's performance of the contract do not give rise to an independent action in tort. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996). Count V will be dismissed.

**IV.　Analysis – Third Party Complaint**

As noted above, in its Third Party Complaint, My Fresh Market contends that, after it successfully bid on evaporators and coolers at the auction, Badger sold those items to someone else. (Doc. 76 at 6). Shortly thereafter, My Fresh Market asserts, Fleisner committed fraud by telling the company that he, personally, would provide substitute evaporators and coolers within three days. (Doc. 76 at 6). Relying on this promise, My Fresh Market made no effort to obtain evaporators and coolers on its own. (Doc. 76 at 6). Fleisner did not provide any such substitute equipment, and My Fresh Market went out of business. (Doc. 76 at 6).

Under Florida law, the elements for actionable fraud are

> (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3)

> the intent by the person making the statement that the representation
> will induce another to act on it; and (4) reliance on the
> representation to the injury of the other party.

*Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).

Fleisner raises three arguments in favor of dismissal of this claim. He argues that My Fresh Market has failed to properly plead detrimental reliance, that My Fresh Market has not pled fraud with the requisite particularity, and that the claim is barred because it is a disguised breach of contract claim. While the first two arguments appear to have merit, the Court need only address the third, because as pled, this is not a fraud claim.

"Fraud" is a deception deliberately practiced in order to secure gain. *See, e.g., Alvarez v. State*, 800 So. 2d 237, 238 (Fla. 3d DCA 2001). In the scenario set out in the Third Party Complaint, Fleisner is not alleged to have sought to secure anything from My Fresh Market. Rather, he is alleged to have personally (and falsely) promised to give My Fresh Market tens of thousands of dollars' worth of refrigeration equipment out of his own pocket. My Fresh Market alleges that Fleisner intended that it rely on his promise "and not challenge [Badger's] act in [sic] selling the original compressors and evaporators to a third party, which did not successfully bid on those items". (Doc. 76 at 6-7). While preventing such a challenge might benefit the entity that sold the equipment to a third party – *i.e.,* Badger – it would not provide any benefit to Fleisner individually.[3] Accordingly, My Fresh Market has not stated a claim against Fleisner for fraud.

**V.    Conclusion**

In consideration of the foregoing, it is hereby

---

[3] In addition, Fleisner is alleged to have promised to provide the replacement equipment within three days, (Doc. 76 at 6), meaning that it was inevitable that My Fresh Market would learn in very short order that the promise had been false. My Fresh Market provides no explanation as to how Badger (or Fleisner) would have expected to benefit from a 72-hour delay by My Fresh Market in challenging the resale of the equipment.

- 8 -

**ORDERED** that the Motion to Dismiss Counts III and V of the Amended Complaint (Doc. 71) is **GRANTED**.   Count III is **DISMISSED WITHOUT PREJUDICE** as to Defendant Zaid Ali, only, and Count V is **DISMISSED WITHOUT PREJUDICE**.   And it is further

**ORDERED** that the Motion to Dismiss Third Party Complaint (Doc. 85) is **GRANTED**, and the Third Party Complaint (Doc. 76) is **DISMISSED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 10, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party