UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BADGER AUCTIONEERS, INC.,

    Plaintiff,

v.                                            Case No:   6:16-cv-572-Orl-31TBS

ZAID ALI and MY FRESH MARKET
CORP.,

    Defendants.

## ORDER

Plaintiff Badger Auctioneers, Inc. conducted an auction at which it is alleged, Defendant Zaid Ali was the high bidder for certain merchandise (Doc. 66 at ¶¶ 10-11, 23). Plaintiff alleges that Ali failed to pay in full, for the merchandise he bought (Id. at ¶¶ 24, 34-35). After the auction, Defendant My Fresh Market Corp. allegedly gave Badger a check in payment of a portion of the purchase price (Id. at ¶ 30). The check was dishonored by the bank (Id. at ¶ 32). Now, Badger brings this collections case against Ali and My Fresh Market (Id.) My Fresh Market counters that it had a valid auction contract which Badger breached, and that it was defrauded by Badger's chief executive, Theodore W. Fleisner (Doc. 75 at ¶¶ 29-34; Doc. 76).

Defendants propounded the following requests for production and received the following responses from Badger:

> 18. Copies of emails between Fleisner and Ali concerning the March 2015 auction.
>
> Objection; seeks information not relevant to defendants' claims or defenses.

> 19. Copies of emails between Fleisner and My Fresh Market concerning the March 2015 auction.
>
> Objection; seeks information not relevant to defendants' claims or defenses.
>
> 20. Copies of emails between any of your employees since this lawsuit began, concerning or relating to My Fresh Market.
>
> Objection; it would be overly broad and unduly burdensome and not likely to lead to evidence relevant to defendants' claims or defenses to search through all employees' emails for emails referring to My Fresh Market.
>
> 21. Copies of emails between any of your employees since this lawsuit began, concerning or relating to Ali.
>
> Objection; it would be overly broad and unduly burdensome and not likely to lead to evidence relevant to defendants' claims or defenses to search through all employees' emails for emails referring to Mr. Ali.

(Doc. 90 at 3-4).

Defendants motioned the Court to overrule Badger's objections and compel production of the documents responsive to these requests (Doc. 90). Badger did not file a response to the motion and on September 15, 2017, the Court granted the motion to compel (Doc. 95). In making its ruling, the Court said that because Badger had not responded to the motion it was deemed unopposed (Id., at 1).

Badger has now filed (1) Plaintiff's Response to Defendants' Motion to Compel Production of Documents and Overrule Objections (Doc. 96), (2) Plaintiff's Motion to Reconsider Granting Defendants' Motion to Compel Production of Documents and Overrule Objections (Doc. 97), and (3) the Supplemental Declaration of Kelsey Tighe (Doc. 98). Defendants have filed a memorandum in opposition to Plaintiffs' Motion to Reconsider Granting Motion to Compel (Doc. 101). As grounds for reconsideration, Badger's counsel explains that due to human error, the deadline for responding to the

motion to compel was incorrectly input into the firm's electronic calendaring system (Doc. 97 at 1; Doc. 98 at ¶ 5). Badger asks to be excused from this mistake, and that the Court consider its response in ruling on the motion to compel (Doc. 97). Badger also represents that it has complied with Defendants' requests 18 and 19 and therefore, the Order compelling that production is moot (Doc. 97 at 2).

Badger seeks relief under FED. R. CIV. P. 59 (Id.). The federal rules do not specifically provide for the filing of a motion for reconsideration. But, it is generally understood that FED. R. CIV. P. 59(e) encompasses motions for reconsideration. 11 Charles Alan Wright et al., Federal Practice & Procedure § 2810.1 (3d ed. 2017); Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991), cert. denied, 506 U.S. 828 (1992)).

"In the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy, to be employed sparingly." Capitol Body Shop, Inc. v. State Farm Mut. Auto., Case No. 6:14-cv-6000-Orl-31TBS (M.D. Fla. May 12, 2016) (Doc. 129 at 2) (citing United States v. Bailey, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003)). "Appropriate circumstances for reconsideration include situations in which the Court has obviously misapprehended a party's position, the facts, or mistakenly has decided an issue not presented for determination." Id. (citing Anderson v. United Auto Workers, 738 F. Supp. 441 (D. Kan. 1990)). Reconsideration is also warranted based upon: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." McGuire v. Ryland Grp., Inc., 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007). See also 11 Charles Alan Wright et al., Federal Practice & Procedure § 2810.1.

The party moving for reconsideration must present "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." McGuire, 497 F. Supp. 2d at 1358 (internal quotations omitted). "This ordinarily requires a showing of clear and obvious error where the interests of justice demand correction." Id. (internal quotations omitted). "A party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration." Id. (internal quotations omitted). "To avoid repetitive arguments on issues already considered fully by the court, rules governing reargument are narrowly construed and strictly applied." Capitol Body Shop, Case No. 6:14-cv-6000-Orl-31TBS, Doc. 129 at 3 (citing St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., 976 F. Supp. 198, 201-02 (S.D.N.Y. 1996)).

Badger has not met its burden to obtain reconsideration because nothing it has presented shows that the Court misapprehended the facts or the applicable law. As the Court explained in its Order granting the motion to compel, since the Federal Rules of Civil Procedure were amended effective December 1, 2015, Rule 34 has required a party objecting to requests for production to: (1) "state with specificity the grounds for objecting to the request, including the reasons;" (2) "state whether any responsive materials are being withheld on the basis of that objection;" and (3) "[a]n objection to part of a request must specify the part and permit inspection of the rest." Badger's objections do not satisfy these requirements and were therefore, properly overruled.

Even if the Court were to consider Badger's response to the motion to compel, the outcome would be the same. Badger contends that requests 20 and 21 are objectionable because they seek emails that were created after this lawsuit was filed and therefore, Defendants must be on a "'fishing expedition' to compel extensive document production

- 4 -

of all Badger's internal communications solely to harass Badger and increase the cost of this litigation with needlessly broad and burdensome discovery requests." (Doc. 96 at 5). This argument fails because it is a conclusion unsupported by facts. Badger has failed to tell the Court how many people it employs; the number of those employees who may have sent or received email discussing Defendants; or how much time and money would be required to search Badger's email and locate the requested information.

Badger argues that email written after the case was filed "would only bear on the course of litigation itself" and therefore, is "simply not relevant to any party's claims or defenses." (Id.). The Court wonders how Badger can make this argument in good faith since it is clear that it has not searched its email to determine what, if any, documents it has that are responsive to requests 20 and 21 (Id. at 6) ("[A]ny minimal relevance such emails would have is far outweighed by the expense and burden Badger **would be forced to incur in searching** all post-filing internal emails between Badger employees," and "the vast majority of the post-filing internal emails sought by the defendants **are likely to include** copies to Badger's counsel and thus would be protected by the attorney-client privilege or the attorney work-product doctrine.") (emphasis added). This unsubstantiated argument fails to persuade the Court.

Badger cites to Atkins v. Dist. Bd. of Trs. of Edison State College, No. 2:12-cv-97-FtM-29SPC, 2013 U.S. Dist. LEXIS 24534, at *11-12 (M.D. Fla. Feb. 21, 2013). In this case, Edison State College was asked to produce all emails for a period of months that were sent between the plaintiff's supervisor and the president of the college, which concerned the school or its personnel. 2013 U.S. Dist. LEXIS 24534, at *8-9. The college employed more than 1,000 people, all of whose names would have to be searched to comply with the request. Id. at 10. The court found the request overbroad and limited it to

email concerning plaintiff. Id. Here, as in Atkins, the Court is permitting a search for email concerning parties to the case. And, Badger has not provided evidence showing that a search of its email would be comparable in scope to the search Edison College was asked to undertake. For these reasons, Atkins does not persuade the Court to change its ruling.

Next, Badger argues, for the first time, that the vast majority of the post-filing internal emails sought by the defendants are likely to include copies to Badger's counsel and thus would be protected by the attorney-client privilege or the attorney work-product doctrine (Doc. 96 at 6). In making this argument, Badger cites to Fojtasek v. NCL (Bahamas) Ltd., No. 09-20581-CIV, 262 F.R.D. 650, 659-60, (S.D. Fla. Nov. 6, 2009) for the proposition that "employee emails on which counsel was cc'd were exempt from production under the work-product doctrine" (Id.). The Court fails to understand how Plaintiff can make this argument before locating and reading the emails requested by Defendants. Then, if some of the email is privileged, Badger would have an obligation to produce a privilege a log, which it has failed to do. See FED. R. CIV. P. 26(b)(5)(a). Fojtasek does not help Badger because there, the court made a careful review of the emails in question to determine whether the work-product doctrine applied. More applicable to this situation is United States v. Halifax Hosp. Med. Ctr., in which the Court explained:

> Simply labeling a document "Confidential–Attorney Client Privilege" is not "a sufficient basis for legally presuming or even logically assuming a primary legal purpose." Rice, Electronic Evidence 260. And, simply funneling non-privileged information through an attorney does not automatically encase the document in the privilege. In re Vioxx, 501 F.Supp.2d at 797. "The content of the message must request legal assistance, and the information conveyed must be reasonably related to the assistance sought." Rice, Electronic Evidence

> 260; Tyne v. Time Warner Entm't Co., 212 F.R.D. 596 n. 4 (M.D. Fla. 2002) (the attorney-client privilege "label may serve to put recipients on notice that the document is confidential, but it does not at all prove the existence of privilege.").
>
> ***
>
> Courts have held that when a communication is simultaneously emailed to a lawyer and a non-lawyer, the corporation "cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes." In re Seroquel, 2008 WL 1995058, at *4; In re Vioxx, 501 F.Supp.2d at 805 (citing United States v. Chevron Corp., No. C 94-18855BA, 1996 WL 444597, at *2 (N.D. Cal. 1996) ("When a document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been prepared primarily to seek legal advice and the attorney-client privilege does not apply."); United States v. Int'l Bus. Mach. Corp., 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice.")). In such cases, the email and attachments are not privileged and are discoverable. When an email is sent to a lawyer and non-lawyers in the corporation are *copied,* it "raise[s] a question as to whether the primary purpose of the communication was for legal advice or assistance." In re Vioxx, 501 F.Supp.2d at 812.

No. 6:09-cv-1002-Orl-31TBS, 2012 WL 5415108, at *3-4 (M.D. Fla. Nov. 6, 2012),

For these reasons, the motion for reconsideration is **DENIED**. The parties shall comply with the Court's earlier Order at Docket Entry 95.

**DONE** and **ORDERED** in Orlando, Florida on October 5, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record